IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARNIE MASUDA-CLEVELAND, | ) | CIVIL 16-00057 LEK-RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LIFE INSURANCE COMPANY OF | ) | |
| NORTH AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING PLAINTIFF'S:  (1) MOTION TO
DETERMINE SCOPE OF ADMINISTRATIVE RECORD; AND
(2) MOTION TO DETERMINE APPLICABLE STANDARD OF REVIEW**

Before the Court is Plaintiff Marnie Masuda-Cleveland's

("Plaintiff") Motion to Determine Scope of Administrative Record

("Administrative Motion"), filed on August 24, 2016.  [Dkt. no.

33.]  Defendant Life Insurance Co. of North America ("Defendant")

filed its memorandum in opposition on September 30, 2016, and

Plaintiff filed her reply on October 17, 2016.  [Dkt. nos. 40,

44.]  Also before the Court is Plaintiff's Motion to Determine

Applicable Standard of Review ("Standard of Review Motion"),

filed on September 9, 2016.  [Dkt. no. 35.]  Defendant filed a

memorandum in opposition on September 30, 2016.[1]  [Dkt. no. 38.]

_____

[1] Along with its opposition to both the Administrative
Motion and the Standard of Review Motion, Defendant filed a
Concise Statement of Facts ("CSOF").  [Dkt. nos. 39 ("Def.'s
Standard of Review Motion CSOF"), 41 ("Def.'s Administrative
Motion CSOF").]  Defendant also filed an ex parte motion for
leave to file the Declaration of Michael Dean James, Defendant's
Operations Representative, as a separate document to support both
(continued...)

Both motions came on for hearing on November 7, 2016.  After careful consideration of both motions, supporting and opposing memoranda, and the arguments of counsel, the Administrative Motion and the Standard of Review Motion are HEREBY DENIED for the reasons set forth below.

<u>BACKGROUND</u>

Plaintiff's Complaint, filed on February 9, 2016, challenges Defendant's denial of accidental death benefits after the untimely passing of Plaintiff's husband, Harlan Masuda ("Masuda").  [Dkt. no. 1.]  The Complaint states that:  Masuda was driving towards Baldwin Beach Park in Pa`ia, Maui on February 11, 2014; he stopped the car before the entrance, and then proceeded forward, sideswiping Lifeguard Glenn Larson's ("Larson") truck; Larson approached Masuda's car and saw him "laughing," "spinning in his seat," and "stepping on the gas and revving his engine"; Masuda's car reached a barrier, and he continued to rev the engine until the barrier tipped over; and "the truck took off across the field at a high rate of speed and then collided into a coconut tree on the opposite side of the field."  [Complaint at ¶ 8a.–d.]  Plaintiff argues that Masuda

---

[1](...continued)
Defendant's Standard of Review Motion CSOF and Defendant's Administrative Motion CSOF ("Motion for Leave").  [Filed under seal 9/30/16 (dkt. no. 37).]  On September 30, 2016, Defendant filed the Declaration of Michael Dean James ("James Decl.").  [Dkt. no. 42.]  The Court granted the Motion for Leave on October 17, 2016.  [Dkt. no. 45.]

died as the result of "fatal head injuries" caused by a car accident.  [Id. at ¶ 8e.]

Masuda worked for Hawaiian Electric Industries, Inc. ("Hawaiian Electric"), and, pursuant to 29 U.S.C. § 1002(7),[2] was a participant in its Group Accident Plan ("the Plan").  [Id. at ¶ 4.]  Plaintiff contends that she "is a beneficiary of the group accidental death plan issued to her husband . . . that was underwritten by [Defendant], pursuant to 29 U.S.C. [§] 1002(8)."[3] [Id.]  Defendant administered the Plan under Group Accident Policy No.: OK 820810 ("the Policy").[4]  [Id. at ¶ 5.]  After Masuda's death, Plaintiff submitted a claim for accidental death benefits.  [James Decl., Exh. G.]  Plaintiff's claim was denied on May 20, 2014 ("5/20/14 Denial").  [Id., Exh. L.]  Plaintiff

---

[2] 29 U.S.C. § 1002(7) defines "participant" as

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

[3] 29 U.S.C. § 1002(8) defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."

[4] The Policy is attached to the James Declaration as Exhibit A.

filed her first appeal on November 5, 2014 ("First Appeal"),[5] which Defendant denied on December 18, 2014 ("12/18/14 Denial").[6] [Id., Exh. Q (First Appeal); id., Exh. S (12/18/14 Denial).] Plaintiff filed a second appeal on June 15, 2015, and submitted an additional document on June 16, 2015 (collectively "Second Appeal"). [Id., Exhs. U, V.] Defendant denied the Second Appeal on August 20, 2015 ("8/20/15 Denial").[7] [Id., Exh. AA.]

On August 24, 2015, Plaintiff requested a copy of all documents upon which the 8/20/15 Denial was based ("8/24/15 Letter"), which Defendant provided on September 9, 2015 ("9/9/15 Letter"). [Id., Exh. BB (8/24/15 Letter); id., Exh. CC (9/9/15 Letter).] On November 5, 2015, Plaintiff requested a review of the 8/20/15 denial because she alleged that it "raised an

---

[5] Plaintiff notified Defendant of her intention to appeal on July, 20, 2014 ("7/20/14 Letter"), and she requested all documents related to the 5/20/14 Denial. [Id., Exh. M.] Because they needed more time to prepare the requested documents, Defendant extended Plaintiff's deadline for filing the appeal. [Id., Exh. N.] On August 4, 2014, Plaintiff's counsel sent Defendant a letter to inform it that, going forward, a new attorney would be handling Plaintiff's claim. [Id., Exh. O.]

[6] On December 4, 2014, Defendant notified Plaintiff that it needed additional time to reach a decision on the First Appeal. [Id., Exh. R.]

[7] On June 22, July 20, and August 5, 2015, Defendant informed Plaintiff that it would need additional time to reach a decision on the Second Appeal. [Id., Exh. W ("6/22/15 Letter"); id., Exh. X ("7/20/15 Letter"); id., Exh. Y ("8/5/15 Letter").]

entirely new and different theory" ("11/5/15 Letter").[8]  [Mem. in Supp. of Administrative Motion, Decl. of Jeffrey C. Metzger ("Metzger Administrative Motion Decl."), Exh. A.]  Attached to the 11/5/15 Letter were letters from:  (1) Lindsey Harle, M.D. ("Dr. Harle Letter"), dated October 20, 2015; [id., Exh. B;] (2) Peter W. Rossi, M.D. ("Dr. Rossi Letter"), dated September 25, 2015; [id., Exh. C;] and (3) Joana H. Magno, M.D. ("Dr. Magno Letter," and collectively "Doctors' Letters") [id., Exh. D].[9]  On November 18, 2015, Defendant informed Plaintiff that she had exhausted her appeals. [James Decl., Exh. DD.]  On November 30, 2015, Plaintiff again requested a review of the 8/20/15 Denial, and included the Doctors' Letters. [Metzger Administrative Motion Decl., Exh. E.]  On December 21, 2015, Defendant wrote Plaintiff and reminded her that her appeals had been exhausted, and denied adding a new theory of denial. [James Decl., Exh. EE.]  The instant suit followed.

    Plaintiff brings her claims pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(1). [Complaint at ¶ 1.]  Plaintiff argues that she was denied a full and fair review of her benefits claim. [Id. at ¶ 30.]  Plaintiff seeks attorneys' fees and costs, [id.

---

    [8] Plaintiff argues that the 8/20/15 Review was based on a "paper review" of the record by Dr. Scott Denton ("Denton Report"). [11/5/15 Letter at 1.]

    [9] The Dr. Magno Letter is not dated.

at ¶ 39,] and equitable relief in the form of:  the addition of the Doctors' Letters to the administrative record; an order enjoining Defendant from denying Plaintiff's claim; and an order removing Defendant as the "plan and/or claims administrator" for Plaintiff's claim [id. at ¶ 40].  Plaintiff also seeks: accidental death benefits under the Plan, plus interest; a declaration that Masuda's death was accidental; a declaration that Defendant violated the Plan's terms; and any other relief the Court "deems just and proper."  [Id., Prayer for Relief ¶¶ 1-3, 7.[10]]

## I.    **Administrative Motion**

The Ninth Circuit has stated:

> When a plan administrator has failed to follow a procedural requirement of ERISA, the court may have to consider evidence outside the administrative record. . . .  We follow the Sixth Circuit in holding that, when an administrator has engaged in a procedural irregularity that has affected the administrative review, the district court should "reconsider [the denial of benefits] after [the plan participant] has been given the opportunity to submit additional evidence." VanderKlok v. Provident Life & Accident Ins. Co., 956 F.2d 610, 617 (6th Cir. 1992).
>
> . . . .
>
> Even when procedural irregularities are smaller, though, and abuse of discretion review applies, the court may take additional evidence when the irregularities have prevented full development of the administrative record.  In that

---

[10] Paragraphs 4 to 6 of the Prayer for Relief duplicate previous requests.

> way the court may, in essence, recreate what the
> administrative record would have been had the
> procedure been correct.

Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 972-73 (9th

Cir. 2006) (some alterations in Abatie).[11]   Plaintiff argues that

the Court should consider the Doctors' Letters as part of the

administrative record because, by including a "new reason" in the

8/20/15 Denial and failing to give Plaintiff copy of the Denton

Report, Plaintiff was denied a full and fair review.   [Mem. in

Supp. of Administrative Motion at 5, 9.]   The Court will address

each of these arguments in turn.

   A.   **The "New Reason" in the 8/20/15 Denial**

      Plaintiff argues:

         Defendant's initial determination denying
      Plaintiff's claim, and its determination rejecting
      Plaintiff's first appeal, both asserted that
      a) Masuda died from the injuries suffered in the
      accident, and b) Masuda suffered some medical
      event, that . . . the second denial speculated was
      either a heart attack or a seizure, that was the
      etiology or cause of the crash.   Plaintiff is only
      required to appeal the grounds upon which the
      claim is denied.   As there was no dispute,
      therefore, that Masuda's death was from the
      injuries in the accident, there was nothing for
      Plaintiff to appeal on that issue.

         Defendant's flip-flop in the "final denial"
      to claiming that Masuda's death did not occur from
      his head injuries, but was from a "cardiac event"
      (and added that it might have been an arrhythmia
      that Masuda suffered if not a heart attack) is
      precisely the kind of last-minute excuse to reject

---

      [11] Abatie was abrogated on other grounds by Metro Life
Insurance Co. v. Glenn, 554 U.S. 105 (2008).

a claim to which the _Abatie_ court wrote of. [Mem. in Supp. of Administrative Motion at 8-9.]

The Ninth Circuit has found a denial of a fair review in violation of ERISA where the reasoning for the decision is "shifting," "inconsistent," or "illogical." _Salomaa v. Honda Long Term Disability Plan_, 642 F.3d 666, 678 (9th Cir. 2011). In _Salomaa_, the plaintiff – a car company employee with an impeccable employment record – was diagnosed with chronic fatigue syndrome. _Id._ at 668-69. The plaintiff applied for disability benefits, appealed the defendant's determination, and filed a suit in federal district court, but he was denied each time. _Id._ at 670-73. The Ninth Circuit considered the standard of review the district court should have applied, _id._ at 673-76, as well as the "reasonableness" of the denial of the plaintiff's claim, _id._ at 676-80. In examining the plan administrator's reasons for denial, the Ninth Circuit observed:

> The plan's reasons for denial were shifting and inconsistent as well as illogical. The initial denial says that there were "no specific serial descriptions of appearance or physical signs consistent with chronic fatigue syndrome," but the final denial omits any mention of physicians' observations, because the physicians' letters to CIGNA are replete with dramatic descriptions of their observations of Salomaa's appearance and physical condition. About the only thing that stays the same from the initial denial to the final denials is the irrelevant emphasis on absence of objective evidence such as blood tests.

_Id._ at 678.

8

While Plaintiff argues that the same thing happened here – namely, that "Defendant . . . added a new reason and basis for denial in its rejection of Plaintiff's second appeal" [Mem. in Supp. of Administrative Motion at 9] – the record says otherwise.  The Policy states that,

> We agree to pay benefits for loss from bodily injuries:
>
>> a) caused by accident which happens while an insured is covered by this policy; and
>>
>> b) which, directly and from no other causes, resulted in a covered loss. . . .
>
> We will not pay benefits if the loss was caused by:
>
>> a) sickness, disease, or bodily infirmity; or
>>
>> b) any of the Exclusions listed in the policy.

[The Policy at 4.[12]]

The 5/20/14 Denial explains:

> Documentation received and reviewed indicates that Harlan Masuda passed away on 2/11/2014 after sustaining blunt force injuries in a single vehicle crash.  Information on file supports that Mr. Masuda suffered a medical event while driving, which resulted in his crash.  This is supported by not only the Coroner, but multiple witnesses, who stated that there was no breaking or avoidance maneuvers as Mr. Masuda sped toward the coconut tree.  In his review of the case file, in-house

_____

[12] The entirety of the James Declaration is consecutively paginated using very large numbers.  For the sake of convenience and clarity, the Court will reference the page numbers assigned by this district court's electronic case filing system.

> Medical Director, Dr. Hall, stated that "with the history of the bizarre, immediate events prior to the crash, the past medical history of prediabetes, hypertension, and dyslipidemia and the autopsy findings of severe atherosclerotic narrowing of the . . . coronary artery it is concluded . . . that Mr. Masuda had an acute medical event that was the etiology of his [crash]."

[5/20/14 Denial at 4 (alterations in original).]  The 12/18/14

Denial reached a similar conclusion to the 5/20/14 Denial:

> In this case, Mr. Masuda was witnessed by a lifeguard, presumably with some emergency medical training, to be experiencing something similar to seizure (and if not a seizure, then some form of medical event) immediately before the crash.  A medical event is the most likely explanation for Mr. Masuda hitting the lifeguard's truck, not responding verbally when confronted by the lifeguard, revving his engine while his vehicle was against the barrier, and driving several hundred feet with no avoidance maneuvers.  This is supported by the review by Dr. Hall that some form of medical event was likely to a reasonable degree of medical certainty and the pathology report that concludes the insured had atherosclerotic cardiovascular disease and that some acute medical event, such as a myocardial infarction or seizure, likely occurred to cause the crash.  Therefore, it would be reasonable to conclude under this policy language that there is no coverage for his death because an illness, disease or bodily infirmity directly caused the fatal accidental injury.

[12/18/14 Denial at 4.]

Finally, the 8/20/15 Denial considered the Doctors'

Letters submitted by Plaintiff, as well as the Denton Report.

[8/20/15 Denial at 5-8.]  The 8/20/15 Denial reasoned:

> A review of the information in the file shows that Harlan Y. E. Masuda had a pre-existing medical condition of hypertension for which he received

treatment through prescribed anti-hypertensive medication.  On 02/11/2014[,] Mr. Masuda drove his vehicle slowly into another vehicle that had been parked.  A reliable witness stated that while he tried to converse with Mr. Masuda he was acting unusual immediately after this crash, reporting delirious actions and stated he appeared intoxicated.  Without responding to the witness, Mr. Masuda depressed the gas pedal and accelerated into a concrete barrier, which temporarily stopped his vehicle.  However, Mr. Masuda continued to press the gas pedal of his vehicle and caused it to break free from the barrier.  Mr. Masuda continued depressing the accelerator across a field until he struck a coconut tree.  On autopsy it was noted that Mr. Masuda had suffered lacerations, scrapes, and bruises to his head, neck, upper chest, arms and right foot, as well as fractures of the facial and nasal bones and jaw. Dr. Denton stated that the autopsy report showed Mr. Masuda had ". . . no rib, skull, basal skull, or upper cervical spine fractures, and no injuries or hemorrhages of the brain, lungs, aorta, heart, liver, or internal hemorrhages."  Dr. Denton, after reviewing the information in the file, concluded that ". . . Mr. Masuda suffering sudden cardiac arrhythmia from myocardial ischemia, or a heart attack, due to his severe coronary artery atherosclerosis while in his vehicle.  Therefore, the main underlying cause of his death and the cause of the crash are both best attributed to a sudden cardiac event."

[Id. at 8.]  Plaintiff asserts that the 8/20/15 Denial states, for the first time, that "Masuda's death did not occur from his head injuries."  [Mem. in Supp. of Administrative Motion at 9.] To the contrary, the 5/20/14 Denial, 12/18/14 Denial, and 8/20/15 Denial all conclude that Masuda died as a result of a medical event, likely having to do with his heart, and that it was that

11

medical event that caused the crash.[13]  The Court FINDS that the 8/20/15 Denial did not contain a "new reason."

      **B.**    **Failure to Provide the Denton Report**

        Plaintiff also argues that the administrative record should be expanded to include the Doctors' Letters because Defendant did not provide her with the Denton Report prior to the 8/20/15 Denial.  To support her position, Plaintiff cites Salomaa and Yancy v. United of Omaha Life Insurance Co., Case No. CV 14-9803 PSG (PJWx), 2015 WL 5132086 (C.D. Cal. Aug. 25, 2015).

        Pursuant to the regulations governing ERISA:

> Except as provided in paragraphs (h)(3) and (h)(4) of this section,[14] the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures –
>
>     . . . .

---

[13] Other district courts in the Ninth Circuit have stated:

> Cases that have found an abuse of discretion on the basis of a failure to comply with this dialogue requirement have generally involved situations where the plan administrator knew of specific missing information but failed to notify the claimant of the need for the information, or where the administrator gave illogical or inconsistent grounds for the denial.

Kludka v. Qwest Disability Plan, No. CV-08-01806-PHX-DGC, 2012 WL 1681983, at *5 (D. Ariz. May 14, 2012).

[14] Section 2560.503-1(h)(3) concerns "[g]roup health plans," and § 2560.503-1(h)(4) covers "[p]lans providing disability benefits."

> > (iii) Provide that a claimant shall be
> > provided, **upon request and free of charge**,
> > reasonable access to, and copies of, all
> > documents, records, and other information
> > relevant to the claimant's claim for
> > benefits.  Whether a document, record, or
> > other information is relevant to a claim for
> > benefits shall be determined by reference to
> > paragraph (m)(8)[15] of this section[.]

29 C.F.R. § 2560.503-1(h)(2)(iii).  In <u>Salomaa</u>, the first denial

of the plaintiff's claim was based, in part, on "one physician

[who] had read [the plaintiff's] medical file and written his

opinion."  642 F.3d at 669.  The first denial "invited

supplementation," but the defendant in <u>Salomaa</u> was still

unconvinced after the plaintiff submitted additional evidence,

and issued a "final denial."  <u>Id.</u> at 670.  Thereafter, the

plaintiff filed an appeal.  In addition, the plaintiff's

"attorney made a written request for [the plaintiff's] entire

file, including correspondence with anyone the plan consulted

with regard to the claim," but "[t]he plan did not respond to

[the plaintiff's] attorney's letter."  <u>Id.</u> at 671.  In its letter

denying the appeal, the defendant "quoted from a file review it

had obtained from its own consulting physician," but "[t]his

consulting physician's report, like the previous one, was not

---

[15] Section 2560.503-1(m)(8)(i) defines "relevant" as, in
part, "[a] document, record, or other information" that "[w]as
relied upon in making the benefit determination[.]" It is clear
to the Court that, if requested, the Denton Report would qualify
as "relevant."

provided to [the plaintiff's] lawyer." Id. at 672-73.  The Ninth

Circuit held that, because "the plan failed to furnish [the

physicians'] letters to [the plaintiff] or his lawyer," "the plan

denied him the statutory obligation of a far review procedure."[16]

Id. at 680.

     In Yancy, the plaintiff submitted a claim for long term

disability benefits under an ERISA-governed plan, and the

defendant insurance company had two nurses review the plaintiff's

medical records.  2015 WL 5132086, at *1.  After her claim was

denied, the plaintiff requested a copy of her file and filed a

timely appeal.  Id.  Along with her appeal, the plaintiff

submitted a neuropsychological report, and, during the course of

the appeal, she had an Independent Medical Examination ("IME") by

a different neuropsychologist.  Id. at *2.  The plaintiff

requested the IME report twice, but the defendant failed to

provide her with a copy and denied her appeal.  Id.  The district

court noted that, in responding to the plaintiff's assertion that

the court in that cause should allow the plaintiff to augment the

administrative record, the defendant in Yancy tried to

"distinguish[ ] between documents generated and considered when

---

[16] Plaintiff argues that Salomaa "does not state that
plaintiff Salomaa or his lawyer asked for the review report
before the final determination was made, nor did the court
require such before allowing a claimant the right to respond to
it."  [Reply at 9.]  This is simply not true.  See Salomaa, 642
F.3d at 671.

making the initial claim determination and those generated and considered when making the final appellate determination." Id. at *3. The district court, however, cited Salomaa in concluding that "failure to provide a claimant with a physician's report generated during the administrative appeal process violates ERISA's 'full and fair review' disclosure requirements," and rejected the defendant's distinction. Id. at *4.[17]

Case law and the relevant regulations state that a plan must provide a claimant with copies of his or her record "upon request." Here, Plaintiff does not claim that she requested a copy of the Denton Report, or that she even made a general

_____

[17] In its opposition, Defendant argues that the relevant regulations "[d]o not require that a plan administrator provide [a] claimant copies of medical reviews as part of the appeal process prior to issuing a final decision on appeal." [Mem. in Opp. to Administrative Motion at 13-14.] To support its position, Defendant cites Montoya v. Reliance Standard Life Insurance Co., Case No. 14-cv-02740-WHO, 2015 WL 1056560 (N.D. Cal. Mar. 20, 2015). Montoya relies on a Tenth Circuit Case, Metzger v. UNUM Life Insurance Co. of America, 476 F.3d 1161 (10th Cir. 2007), and other out of circuit cases to support its conclusion that "a claimant is not guaranteed the right to review IMEs or peer review reports prior to the determination of the administrative appeal." 2015 WL 1056560, at *5 (internal quotation marks omitted). Montoya also cites Ninth Circuit district court cases that pre-date Salomaa. In Yancy, the district court stated, "the Montoya court did not mention Salomaa in its analysis and, as the plaintiff failed to raise the case in its briefing, the court may have been unaware of the conflicting Ninth Circuit authority when issuing its decision." 2015 WL 5132086, at *4 (citation omitted). Because the district court in Montoya did not consider binding Ninth Circuit precedent, the district court in Yancy stated that the defendant could not rely on Montoya "to overcome the ruling in Salomaa." Id. (citation omitted). This Court agrees, and will therefore not address Defendant's argument regarding Montoya.

request for information relied upon during the Second Appeal.[18]
The Court therefore FINDS that there was no procedural
irregularity and CONCLUDES that Plaintiff is not entitled to
submit additional evidence to be considered as part of the
administrative record.[19]  The Administrative Motion is therefore
DENIED.

## II.  **Standard of Review Motion**

The Standard of Review Motion argues that the Court
should review Defendant's decision de novo.  Specifically,
Plaintiff asserts that the Plan does not merit abuse of
discretion review because:  (1) it does not expressly grant
discretion to Defendant to make benefit determinations as
required by ERISA; and (2) discretionary clauses violate Hawai`i
law.  [Mem. in Supp. of Standard of Review Motion at 5, 9.]  The
Court will address each of these arguments in turn.

---

[18] At the hearing, Plaintiff's counsel represented that he
did not request the Denton Report because he did not know that it
existed.  However, both the 7/20/15 Letter and the 8/5/15 Letter
explained that Defendant was waiting on a review by an
independent forensic pathologist.

[19] The Court notes that, in the 7/20/14 Letter, Plaintiff's
former attorney stated, "[p]lease consider our document request
ongoing; and we demand production of any documents meeting the
description set forth above which are received, compiled, or
created during the course of further administration of this
claim."  [7/20/14 Letter at 4.]  Neither party addressed the
language in the 7/20/14 Letter.  As such, any argument regarding
the effect of the 7/20/14 Letter is not before the Court.

### A.    <u>Grant of Discretionary Authority</u>

The Ninth Circuit has held that, pursuant to <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101 (1989), courts must employ "abuse of discretion review whenever an ERISA plan grants discretion to the plan administrator, but a review informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." <u>Abatie</u>, 458 F.3d at 967.  Here, according to Plaintiff, while the Policy contains the requisite language delegating responsibility to Defendant, the Plan itself does not.  [Mem. in Supp. of Standard of Review Motion at 7.]  Plaintiff argues that having this language in the Policy is not sufficient, as "other documents do not constitute the Plan."  [<u>Id.</u> at 7-8 (citing <u>CIGNA Corp. v. Amara</u>, 563 U.S. 421, 131 S. Ct. 1866 (2011)).]  Moreover, "[t]he Plan states only that Defendant . . . is the provider of the subject accidental death and dismemberment benefits.  It never refers to Defendant as a fiduciary, never grants it any fiduciary responsibilities, and nowhere in the Plan does it delegate any discretion with regard to claims brought under such policies." [<u>Id.</u> at 8.]

It is undisputed that both the Plan and the Policy are governed by ERISA.

> In the Ninth Circuit, an ERISA plan may be comprised of multiple documents.  <u>Gunn v. Reliance Standard Life Ins. Co.</u>, 399 Fed. Appx. 147, 149 (9th Cir. 2010).  Moreover, there is no

17

> requirement that the documents comprising the Plan
> be labeled as such.  <u>Horn v. Berdon, Inc. Defined</u>
> <u>Ben. Pension Plan</u>, 938 F.2d 125, 127 (9th Cir.
> 1991).  The Supreme Court has made clear that
> [Summary Plan Descriptions ("SPD")] are summaries
> about the Plan and thus do not constitute the
> Plan's terms.  <u>CIGNA Corp. v. Amara</u>, 563 U.S. 421,
> 131 S. Ct. 1866, 1877-78, 179 L. Ed. 2d 843
> (2011).  Extraneous documents, such as SPDs, are
> not themselves part of the Plan.  <u>Oldoerp v. Wells</u>
> <u>Fargo & Co. Long Term Disability Plan</u>, 500 Fed.
> Appx. 575, 577 (9th Cir. 2012).  Notwithstanding
> <u>Amara</u>, courts have found that SPDs and other
> documents may constitute Plan documents where they
> are incorporated by reference.  <u>See</u> <u>Gonzales v.</u>
> <u>Unum Life Ins. Co. of Am.</u>, 861 F. Supp. 2d 1099,
> 1107 (S.D. Cal 2012) (stating that a Plan may
> incorporate other formal or informal documents)
> . . . .

<u>Noah U. v. Tribune Co. Med. Plan</u>, 138 F. Supp. 3d 1134, 1143–44

(C.D. Cal. 2015).  Here, the SPD and the Plan are the same

document.  <u>See</u> Mem. in Supp. of Standard of Review Motion, Decl.

of Jeffrey C. Metzger ("Metzger Standard of Review Motion

Decl."), Exh. 5 (Summary of Hawaiian Electric Welfare Benefits

Plan) at 2 ("Part I is the summary plan description . . . and

plan document for [Hawaiian Electric] Welfare Benefits Plan

("WBP")"); <u>see also</u> <u>id.</u> at 4 (describing the document as the

"Summary Plan Description and Plan Document").  Further, the Plan

states that, "[t]he WBP is an unfunded plan that provides insured

benefits and uninsured employee assistance benefits through the

purchase of group contracts.  All benefits under this plan are

provided to eligible participants, spouses and dependents from

the issuers of these group contracts."  [<u>Id.</u> at 4.]  More

specifically, "[b]enefits are provided through contacts with insurance companies, [Health Maintenance Organizations ("HMOs")], and other benefit providers." [Id.] Defendant is named as the provider for "Accidental Death and Dismemberment Insurance," and the Plan references the Policy number – OK 820810. [Id. at 28.] Finally, under "Claims Procedures" the Plan states:

> The Benefits of the WBP are not provided directly by the WBP but through contracts with insurance companies . . . , HMOs, and other service providers. Accordingly, claims for Benefits must be made to the insurance company, HMO or other service provider that provides the Benefit . . . . For information on how to make claims for benefits, please refer to the claim procedures of your insurance company, HMO, or other service provider.

[Id. at 30.] Thus, the Plan references the Policy, and states that the procedures for making a claim under the Policy will be provided by Defendant.

The Policy contains explicit language regarding delegation:

> For plans subject to [ERISA], the Plan Administrator of the Employer's employee welfare benefit plan (the Plan) has appointed the Insurance Company as the Plan fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims. In this role the Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company in this capacity shall be final and binding on Participants and Beneficiaries of The Plan to the full extend

19

permitted by law.

[The Policy at 7.]   Accordingly, the Policy states that Defendant is the "Plan fiduciary," grants Defendant fiduciary responsibilities, and delegates discretion to Defendant so that it may fulfill its obligations.   See Gonzales, 861 F. Supp. 2d at 1109 ("On this record, [the defendant] has met its burden to show that a plan document – the insurance policy – unambiguously delegates the discretion to determine whether an employee is eligible for . . . benefits." (citations omitted)).   The Court CONCLUDES that the Plan properly grants discretion to Defendant to make benefit determinations.

   B.   **Discretionary Clauses and Hawai`i Law**

        Plaintiff argues that the Court should adopt the opinion of a 2004 letter written by the then Hawai`i Insurance Commissioner ("2004 Insurance Letter"), which interpreted Haw. Rev. Stat. § 431:13-102 to bar discretionary clauses in the insurance business.[20]   [Mem. in Supp. of Standard of Review Motion at 9; Metzger Standard of Review Motion Decl., Exh. 6 (2004 Insurance Letter).]   In Daic v. Metropolitan Life Insurance Co., this district court explained that "[t]he [p]laintiff's

_____

        [20] Haw. Rev. Stat. § 431:13-102 states that, "[n]o person shall engage in this State in any trade practice which is defined in this article as, or determined pursuant to section 431:13-106 to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."   Section 431:13-106 explains the hearings process that the Insurance Commissioner may utilize when necessary.

final argument is that the de novo standard should apply because the 'discretionary clause' . . . violates Hawaii law."  458 F. Supp. 2d 1167, 1174 (D. Hawai`i 2006), *aff'd sub nom*, <u>Daic v. Haw. Pac. Health Grp. Plan for Emps. of Haw. Pac. Health</u>, 291 F. App'x 19 (9th Cir. 2008).  This district court reasoned, "[t]here is no indication that [the 2004 Insurance Letter], or its contents, was passed as an administrative rule or that [the defendant's] ability to act as an insurer in the State of Hawaii was conditioned on compliance with [the 2004 Insurance Letter] itself."  Moreover,

> Even if the [p]laintiff is correct that the [Hawai`i Pacific Health ("HPH")] benefit plan language conferring discretion on [the defendant] violates Hawaii law, this court cannot strike the language from the plan.  [Haw. Rev. Stat.] § 431:13-107 states that "[a]ll remedies, penalties and proceedings set forth in this article are to be invoked solely and exclusively by the commissioner."  In other words, there is no private cause of action for a violation of [Haw. Rev. Stat.] § 431:13-102.  For the court to apply the de novo standard of review, the court would have to declare that the plan language violates [Haw. Rev. Stat.] § 431:13-102.  Had the [p]laintiff brought a declaratory judgment action to achieve this result, the [p]laintiff's complaint would have been dismissed pursuant to the plain language [Haw. Rev. Stat.] § 431:13-107. The court sees no reason to allow the [p]laintiff to circumvent [Haw. Rev. Stat.] § 431:13-107 through an appeal from [the defendant's] denial of benefits. . . .  Although the Insurance Commissioner appears to believe that [the defendant's] conduct was unfair and deceptive, neither the [2004 Insurance Letter] nor [Haw. Rev. Stat.] § 431:13-102 allows the Plaintiff to invalidate the unlawful policy language.  The abuse of discretion standard applies.

Id. (some alterations in Daic) (footnote omitted).[21]  Plaintiff's

argument regarding the lawfulness of discretionary clauses must

be rejected.[22]  Because the Plan properly delegates discretionary

_____

[21] In Hawai`i Management Alliance Ass'n v. Schmidt, decided
the same year as Daic, this district court also considered the
2004 Insurance Letter, and noted that,

> [the plaintiff] alleges that [the 2004 Insurance
> Letter] is an invalid rule since it was not
> properly processed under the [Hawai`i
> Administrative Procedure Act].  The [defendant,
> the Insurance Commissioner for the State of
> Hawai`i ("Commissioner")], on the other hand,
> maintains that [the 2004 Insurance Letter] is
> merely an expansion of the Commissioner's opinion
> as to the proper interpretation of [Haw. Rev.
> Stat.] § 431:13-102.  Thus, both parties
> effectively agree that [the 2004 Insurance Letter]
> is simply an opinion and has no force of law.

Civil No. 07-00593 ACK-KSC, 2008 WL 4107988, at *5 (D. Hawai`i
Sept. 5, 2008).  In Schmidt, this district court also noted that
the Commissioner had, on two occasions, tried unsuccessfully to
get the Hawai`i state legislature to pass a bill outlawing
discretionary clauses.  Id. at *6.  This district court concluded
that, "the Commissioner's unsuccessful efforts to promote anti-
discretionary clause bills further shows that [the 2004 Insurance
Letter] does not have the status of binding law."  Id.  Given
that Daic and Schmidt were decided almost a decade ago, the Court
finds Plaintiff's argument regarding the 2004 Insurance Letter
perplexing, to say the least.

[22] Plaintiff appears to argue that her position on
discretionary clauses is not preempted by ERISA, [Mem. in Supp.
of Standard of Review Motion at 12,] while Defendant asserts that
it is [Mem. in Opp. to Standard of Review Motion at 22].  The
instant motion concerns only what level of review the Court
should apply to the review of the administrative record, and the
issue of preemption is not squarely before the court.  Further,
this district court has already determined that the 2004
Insurance Letter does not have the force of law.  For the purpose
of this Order, the Court does not need to address the parties'
(continued...)

authority to Defendant, and because discretionary clauses are not barred by Hawai`i law, the Court CONCLUDES that the abuse of discretion standard applies. The Standard of Review Motion is HEREBY DENIED.

**CONCLUSION**

On the basis of the foregoing, Plaintiff Marnie Masuda-Cleveland's Motion to Determine Scope of Administrative Record, filed on August 24, 2016, and Motion to Determine Applicable Standard of Review, filed on September 9, 2016, are HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 31, 2017.



     /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MARNIE MASUDA-CLEVELAND VS. LIFE INSURANCE COMPANY OF NORTH AMERICA; CIVIL 16-00057 LEK-RLP; ORDER DENYING PLAINTIFF'S: (1) MOTION TO DETERMINE SCOPE OF ADMINISTRATIVE RECORD; AND (2) MOTION TO DETERMINE APPLICABLE STANDARD OF REVIEW**

---

[22](...continued)
preemption arguments.