FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Nov 30, 2020, 7:53 pm
Michelle Rynne, Clerk of Court

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| MARNIE MASUDA-CLEVELAND,<br><br>        Plaintiff,<br><br>  vs.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>        Defendant. | CIV. NO. 16-00057 LEK-WRP |

**ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
ON THE EXPANDED ERISA ADMINISTRATIVE RECORD**

Before the Court is Plaintiff Marnie Masuda-Cleveland's ("Plaintiff") Motion for Judgment on the Expanded ERISA Administrative Record ("Motion"), filed on February 26, 2020. [Dkt. no. 120 (redacted).[1]] Defendant Life Insurance Company of North America ("Defendant" or "LINA") filed its memorandum in opposition on March 20, 2020, and Plaintiff filed her reply on April 20, 2020. [Dkt. nos. 125, 129.] This matter came on for hearing on June 26, 2020. Plaintiff's Motion is hereby granted for the reasons set forth below.

---

[1] An unredacted version of the memorandum in support of the Motion was filed under seal on February 27, 2020. [Dkt. no. 122.]

BACKGROUND

This matter comes before the Court on remand from the Ninth Circuit. [Memorandum, filed 5/8/19 (dkt. no. 77).[2]] The parties are familiar with the factual and procedural history, and it will not be repeated here in full. Plaintiff's husband, Harlan Masuda ("Masuda") was a participant in Hawaiian Electric Industries, Inc.'s Group Accident Plan ("the Plan"). [Plaintiff's Concise Statement in Support of Motion for Judgment on the Expanded ERISA Administrative Record ("CSOF"), filed 2/26/20 (dkt. no. 121), at ¶ 1 (citing CSOF, Decl. of Jeffrey C. Metzger ("Metzger Decl."),[3] Exh. 1 (Group Accident Policy OK 820810 ("the Policy")), Exh. 2 (letter from Paula Fukuoka dated April 15, 2014)).[4]] Masuda passed away following a single car

---

[2] The Ninth Circuit's Memorandum disposition is also available at 769 F. App'x 517 (9th Cir. 2019).

[3] The CSOF and the Metzger Declaration were filed in redacted form. Unredacted versions were filed on February 27, 2020. [Dkt. nos. 123, 123-1.]

[4] Defendant's concise statement of facts in opposition to the Motion ("Defendant's CSOF"), filed March 20, 2020, [dkt. no. 126,] fails to comply with Local Rule 56.1 of the Local Rules of Practice for the United States District Court for the District of Hawaii. Specifically, Defendant's CSOF does not include "a separate document containing a single concise statement that admits or disputes each fact set forth in the movant's concise statement." See Local Rule LR56.1(e). Therefore, unless specifically controverted in Defendant's CSOF, material facts set forth in Plaintiff's CSOF are deemed admitted. See Local Rule LR56.1(g) (stating that "material facts set forth in the movant's concise statement will be deemed
(. . . continued)

collision on February 11, 2014. [CSOF at ¶ 2; Def.'s CSOF at ¶ 3.] Lindsey Harle, M.D., Coroner's Physician, performed the autopsy on Masuda. [CSOF at ¶ 4 (citing Metzger Decl., Exh. 6 (Maui County Police Department Request for Autopsy and Autopsy Report)); Def.'s CSOF at ¶¶ 6-7 (citation omitted).] She concluded that the cause of death was "'blunt force trauma to the face and neck'" and that the manner of death was accidental. [CSOF at ¶ 4 (quoting Metzger Decl., Exh. 6 (Autopsy Report)).] Dr. Harle also speculated that it was possible that an acute medical event, such as a heart attack or seizure, caused Masuda to lose consciousness and crash. [Metzger Decl., Exh. 6 at PageID #: 2903.[5]]

Defendant denied Plaintiff's claim for benefits, first taking the position that a medical event caused Masuda to crash. [CSOF at ¶ 5; Def.'s CSOF at ¶ 9.] In denying Plaintiff's claim, Defendant relied on its in-house medical director Dr. R. Norton Hall who opined that,

> [w]ith the history of bizarre, immediate events prior to the crash, the past medical history of prediabetes, [hypertension] and dyslipidemia and the autopsy findings of severe atherosclerotic

---

admitted unless controverted by a separate concise statement of the opposing party").

[5] Due to the presence of multiple page numbers on each of the Exhibits themselves, Plaintiff's Exhibits will be cited to the page number assigned by the district court's electronic case filing system.

3

> narrowing of the "widow maker" coronary artery it
> is concluded, with reasonable medical certainty,
> that Mr. Masuda had an acute medical event that
> was the etiology of his uncontrolled dash to his
> death.

See Metzger Decl., Exh. 7 ( letter, dated May 20, 2014, from Defendant denying Plaintiff's claim ("Denial Letter")) at PageID #: 2917 (second page of Staffing Documentation Form signed by R. Norton Hall, M.D., dated 5/19/14). Defendant concluded that "Harlan Masuda passed away on 2/11/2014 after sustaining blunt force injuries in a single vehicle crash. Information on file supports that Mr. Masuda suffered a medical event while driving which resulted in his crash." [Id. at PageID #: 2912.] Therefore, Defendant denied payment of death benefits on the basis that "his death was not caused by an accident as mandated by the policy, but rather, a medical event which caused a motor vehicle crash." [Id. at PageID #: 2913.]

Plaintiff appealed the denial. In response to Plaintiff's first appeal, Defendant upheld its denial of payment. Defendant reasoned that

> [a] medical event is the most likely explanation
> for Mr. Masuda hitting the lifeguard's truck, not
> responding verbally when confronted by the
> lifeguard, revving his engine while his vehicle
> was against the barrier, and driving several
> hundred feet with no avoidance maneuvers. This
> is supported by the review by Dr. Hall that some
> form of medical event was likely to a reasonable
> degree of medical certainty and the pathology
> report concludes the insured had atherosclerotic
> cardiovascular disease and that some acute

4

>     medical event, such as a myocardial infarction or
>     seizure, likely occurred to cause the crash.
>     Therefore, it would be reasonable to conclude
>     under this policy language that there is no
>     coverage for his death because an illness,
>     disease or bodily infirmity directly caused the
>     fatal accidental injury.

[Metzger Decl., Exh. 10 (appeal denial letter from Defendant, dated December 18, 2014 ("First Appeal Denial Letter")) at PageID #: 2930.]

Plaintiff appealed the denial again. In response to the second appeal, Defendant partly adopted the opinion of Dr. Scott Denton, a forensic pathologist hired by Defendant, who concluded that Masuda suffered a heart attack which caused both the crash and Masuda's death, and that the cause of death was not, as Dr. Harle found, blunt force trauma to the face and neck. [CSOF at ¶ 15 (citing Metzger Decl., Exh. 18 (letter from Mike J., dated August 20, 2015 ("Second Appeal Denial Letter")); Def.'s CSOF at ¶ 16 (citing same).] Based on Dr. Denton's opinion that "the injuries to [Masuda's] head and neck documented during the autopsy would be insufficient to cause sudden death in this witnessed manner," Defendant decided that

>     the evidence in the file supports that
>     Mr. Masuda's loss of ability to control his
>     vehicle on 02/11/2014 and the subsequent crash
>     was caused by a medical event due to his illness,
>     disease or body infirmity, and was not caused by
>     an accident, as required by the policy, and there
>     is no coverage.

5

[Metzger Decl., Exh. 18 (Second Appeal Denial) at PageID #: 3022-23.] Defendant also "concluded that Mr. Masuda's sudden cardiac event, which was caused by his severe coronary artery atherosclerosis, significantly contributed to the crash as well as his death, and his loss is specifically excluded from payment." [Id. at PageID #: 3023.]

On February 9, 2016, Plaintiff filed her complaint. [Dkt. no. 1.] On August 31, 2017, this Court issued its Order: (1) Granting Defendant's Motion for Summary Judgment on Plaintiff Marnie Masuda-Cleveland's Complaint Filed on February 9, 2016 [DOC. #1]; and (2) Denying Plaintiff's Motion for Judgment on the Administrative Record ("8/31/17 Order"). [Dkt. no. 67.] Plaintiff filed an appeal from, *inter alia*, the 8/31/17 Order. [Notice of Appeal, filed 10/20/17 (dkt. no. 69).] The Ninth Circuit vacated the 8/31/17 Order, holding that this Court erred in disallowing Plaintiff's rebuttal evidence and that this Court should have applied a higher level of skepticism in its review of whether Defendant abused its discretion in denying Plaintiff's insurance claim.[6] Masuda-

---

[6] The standard of review is not in dispute, as stated by the Ninth Circuit, "[w]hen a district court reviews an administrator's discretionary decision regarding a welfare plan pursuant to [Employee Retirement Income Security Act ('ERISA')], it must decide on the level of skepticism it should bring to that review, and whether the administrator reached its decision in a procedurally sound fashion." Masuda-Cleveland, 769 F.
(. . . continued)

Cleveland, 769 F. App'x at 518-19.  On remand, Plaintiff submitted additional evidence.  See Metzger Decl., Exhs. 20-23, 25, 27-31.[7]  Therefore, the discrete issue before this Court is, whether, when considered with a higher level of skepticism, Defendant's denial of Plaintiff's claim for benefits was an abuse of discretion.

## STANDARD

Plaintiff filed the instant Motion under Fed. R. Civ. P. 52.

> Where review is *de novo*, a Rule 52 motion appears to be the appropriate mechanism for resolving the dispute.  See, e.g., Rabbat v. Standard Ins. Co., 894 F. Supp. 2d 1311, 1314 (D. Or. 2012) ("[W]hen applying the *de novo* standard in an ERISA benefits case, a trial on the administrative record, which permits the court to make factual findings, evaluate credibility, and weigh evidence, appears to be the appropriate proceeding to resolve the dispute."); Lee v. Kaiser Found. Health Plan Long Term Disability Plan, 812 F. Supp. 2d 1027, 1032 n.2 (N.D. Cal. 2011) ("*De novo* review on ERISA benefits claims is typically conducted as a bench trial under Rule 52.") (citation omitted).  However, where review is for abuse of discretion, it appears that [Fed. R. Civ. P.] 56 is the appropriate "conduit to bring the legal question before the district court."  Harlick v. Blue Shield of Cal., 686 F.3d 699, 706 (9th Cir. 2012) (citing Nolan

---

App'x at 518  (some citations omitted) (citing Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 968–69, 971–72 (9th Cir. 2006) (en banc)).

[7] Exhibits 27-29 were filed under seal.  [Dkt. nos. 123-2 to 123-4.]  Although the CSOF stated Exhibit 30 would be filed under seal, Exhibit 30 was never filed.

7

> v. Heald College, 551 F.3d 1148, 1154 (9th Cir. 2009) ); see also Bartholomew v. Unum Life Ins. Co. of Am., 588 F. Supp. 2d 1262, 1265-66 (W.D. Wash. 2008) ("The administrative record submitted in conjunction with [the] litigation exists as a body of undisputed facts," although "the conclusions to be drawn from those facts are definitely in dispute.").

Gallupe v. Sedgwick Claims Mgmt. Servs. Inc., 358 F. Supp. 3d 1183, 1190 (W.D. Wash. 2019) (some alterations in Gallupe). Because the standard of review is for abuse of discretion, Plaintiff's Motion is construed as a motion for summary judgment brought under Rule 56.

> As the Ninth Circuit has stated,
>
> where the abuse of discretion standard applies in an ERISA benefits denial case, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.

Nolan, 551 F.3d at 1154 (citation and internal quotation marks omitted).  Importantly,

> while the abuse of discretion standard generally applies in cases where plan administrators have discretionary authority to determine eligibility for benefits, the precise standard in cases where the plan administrator is also burdened by a conflict of interest is only discernable by carefully considering the conflict of interest, including evidence outside of the administrative record that bears upon it.

Id. at 1153–54.

8

## DISCUSSION

### I. Abuse of Discretion

"Abatie requires a district court to consider the precise contours of the abuse of discretion standard in every case before determining whether the applicable standard was violated." Id. at 1154 (citing Abatie, 458 F.3d at 969). A plan administrator abuses its discretion if the plan administrator "render[s a] decision[] without any explanation,[] construe[s] provisions of the plan in a way that conflicts with the plain language of the plan, or rel[ies] on clearly erroneous findings of fact." Day v. AT&T Disability Income Plan, 698 F.3d 1091, 1096 (9th Cir. 2012) (citation and quotation marks omitted). The language of the plan is interpreted in its ordinary and popular sense, in accordance with how a person of average intelligence and experience would do. Tapley v. Locals 302 & 612 of Int'l Union of Operating Eng'rs-Emps Constr. Indus. Ret. Plan, 728 F.3d 1134, 1140 (9th Cir. 2013) (citation omitted). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Concrete Pipe & Prods. of Cal. v. Constr. Laborers Pension Tr. for S. Cal., 508 U.S. 602, 622 (1993) (alteration in Concrete Pipe) (citation and some quotation marks omitted).

A.  **Level of Skepticism**

The deference granted to a plan administrator pursuant to an abuse of discretion review is tempered by the level of skepticism.  Abatie, 458 F.3d at 968.  As the Ninth Circuit has noted,

> The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history.  A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, Lang[ v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc.], 125 F.3d [794,] 799 [(9th Cir. 1997)]; fails adequately to investigate a claim or ask the plaintiff for necessary evidence, Booton v. Lockheed Med. Benefit Plan, 110 F.3d 1461, 1463-64 (9th Cir.1997); fails to credit a claimant's reliable evidence, Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003); or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

Id. at 968-69.

The abuse of discretion review here is augmented by a higher level of skepticism because:

> (a)  LINA never directly contacted the original physician forensic-pathologist who conducted the autopsy.  That would have been the most prudent course and, indeed, was suggested in an internal manual that, at least at one time, was used by LINA.
>
> (b)  LINA obtained a new report after the prior reviews and used that report to reject the claim

>> on a basis quite different from the previously used basis.
>
> (c) The evidence that the decedent actually had a fatal cardiac event was weak.

<u>Masuda-Cleveland</u>, 769 F. App'x at 518-19.

Defendant gave multiple reasons for denial of payment, and therefore it is not the case that Defendant rendered its decision without any explanation. The Court turns next to the questions of whether Defendant improperly construed the provisions of the plan or relied on clearly erroneous findings of fact.

    B.    **<u>Plain Language of the Plan and Findings of Fact</u>**

> The Policy states, in pertinent part:
>
> We agree to insure those Eligible Persons who are within the covered classes listed in the Organization's application (each herein called the Insured) for whom the required premium is paid and an application made. We will insure the dependent(s) of an Insured provided the correct premium is paid and the eligibility requirements are met.
>
> We agree to pay benefits for loss from bodily injuries:
>
> >  a)    caused by an accident which happens while an insured is covered by this policy; and
> >
> > b)    which, directly and from no other causes, result in a covered loss. (See the Description of Coverage)
>
> We will not pay benefits if the loss was caused by:

   a) sickness, disease, or bodily infirmity; or

   b) any of the Exclusions listed in the policy.

[Metzger Decl., Exh. 1 (Policy) at PageID #: 2878.] In a section titled "Exclusions," the Policy also notes that,

> No benefits will be paid for loss resulting from:
>
> . . . .
>
> 6. sickness, disease, bodily or mental infirmity, or medical or surgical treatment thereof or bacterial or viral infection, regardless of how contracted. This does not include bacterial infection that is the natural and foreseeable result of an accidental external cut or wound, or accidental food poisoning.

[Id., Exh. 7 (Denial Letter) at PageID #: 2915.[8]]

### 1. **Loss Caused by an Accident**

As the Ninth Circuit has stated:

> In McClure v. Life Ins. Co. of N. Am., 84 F.3d 1129 (9th Cir. 1996), we determined that where the applicable plan language is less than obvious ("inconspicuous"), the "policy holder reasonably would expect coverage if the accident were the predominant or proximate cause of the disability." Id. at 1135–36. If, however, the applicable language is conspicuous, recovery could be barred if a preexisting condition

---

[8] The page of the Policy titled "Exclusions" was not included in Exhibit 1 to the CSOF. However, Defendant attached it to the Denial Letter and specifically relied on the exclusionary provision in rejecting Plaintiff's claim. See Metzger Decl., Exh. 7 (Denial Letter) at PageID #: 2912–13 (denying Plaintiff's claim on the basis that "his loss of life is specifically excluded under the terms of the policy").

>  substantially contributed to the loss, "even though the claimed injury was the predominant or proximate cause of the disability." Id. at 1136.

Dowdy v. Metro. Life Ins. Co., 890 F.3d 802, 808 (9th Cir. 2018). Assuming that the applicable language here was conspicuous, "[i]n order to be considered a substantial contributing factor for the purpose of a provision restricting coverage to 'direct and sole causes' of injury, a pre-existing condition must be more than merely a contributing factor." See id. at 809. The medical record does not support Defendant's conclusion that a medical event substantially contributed to Masuda's death; at most, it was a contributing factor. See, e.g., Metzger Decl., Exh. 6 at PageID #: 2903.

Plaintiff is entitled to recovery if Masuda's death was directly, and from no other causes, caused by an accident. The term "accident" is used by Defendant inconsistently. Defendant's inconsistent of the term "accident" and shifting causation explanation are indicative of how it construed the provisions of the plan in a way that conflicts with a plain reading of the provisions.

In the First Appeal Denial Letter, Defendant explains that: "'[A]ccidental Injury' is interpreted to mean unexpected or unforeseen bodily harm" and that "benefits are payable only if the predominate cause of loss was unexpected bodily harm." [Metzger Decl., Exh. 10 (First Appeal Denial Letter) at PageID

13

#: 2930 (alteration in original).]  "Therefore, it would be reasonable to conclude under this policy language that there is no coverage for his death because an illness, disease or bodily infirmity directly caused **the fatal accidental injury**."  [Id. (emphasis added).]  Thus, up to but not including the Second Appeal Denial Letter, Defendant considered the car crash to be an accident and the injuries sustained therein to be Masuda's cause of death, although benefits were denied because an unspecified medical event substantially contributed to his death by causing the crash.  However, in the Second Appeal Denial Letter, Defendant upheld the decision to deny payment because "the subsequent crash was caused by a medical event due to his illness, disease or bodily infirmity, and was not caused by an accident, as required by this policy, and there is no coverage," and that "[s]ince we have determined that no accident, as required by this policy, has occurred, and that losses caused by or resulting from sickness, disease or bodily infirmity are not payable, the documentation provided supports our original determinations to deny payment. . . ."  [Metzger Decl., Exh. 18 (Second Appeal Denial Letter) at PageID #: 3023.]  Therefore, it appears Defendant changed its position and determined that the crash itself was no longer an "accident" and also was no longer the cause of death.

14

"Congress intended for ERISA to protect the interests of plan participants and their beneficiaries. See 29 U.S.C. §§ 1001(b), 1001b(c)(3). Consistent with that policy choice, federal courts have developed a body of common law that construes coverage provisions in a manner that does not unreasonably limit coverage." Dowdy, 890 F.3d at 810 (brackets, citation, and internal quotation marks omitted). Defendant's changing explanation for denial created a moving target for Plaintiff during the appeals process. To that end, Defendant did not allow Plaintiff to respond to the theory that Masuda died from a heart attack and that the blunt force trauma he experienced was insufficient to cause death within the appeals. [Metzger Decl., Exh. 18 (Second Appeal Denial Letter) at PageID #: 3023.] Viewed with the appropriately elevated level of skepticism, Defendant's inconsistent use of "accident," in the first instance to attribute Masuda's death to fatal injuries received in an accident, and in the second instance, to deny the existence of an accident and assert a new cause of death suggests that in at least one of those instances, Defendant did not construe the terms "accident" and "cause" in accordance with the plain language of the policy.

    **2.** **Medical Evidence**

Plaintiff and Defendant procured the opinions of four physicians in addition to Dr. Harle. Of those five, only

Dr. Harle actually examined the body and performed the autopsy. Four of the five physicians, including Dr. Harle, and Dr. Hall (Defendant's own in-house medical director) concluded that Masuda died from the injuries he received to the face and neck as a result of blunt force trauma in the car crash. See, e.g., Metzger Decl., Exh. 7 at PageID #: 2916. Only Dr. Denton concluded that Masuda died of a heart attack, and not the injuries received in the collision. See, e.g., Metzger Decl., Exh. 19 (letter from J. Scott Denton, M.D., dated August 13, 2015) at PageID #: 3030. Dr. Joana Magno and Dr. Peter W. Rossi both opined that there was no evidence of a heart attack (Myocardial infarction) occurred, as would be expected following a heart attack, and that cause of death the motor vehicle accident. [Metzger Decl., Exh. 12 (letter from Joana Magno, M.D., F.A.C.C., dated June 3, 2015) at PageID #: 2946; Exh. 13 (letter from Peter W. Rossi, M.D. F.A.A.N., dated April 21, 2015) at PageID #: 2971.] In the Second Appeal Denial Letter, Defendant disregarded the opinion of its own medical director, which it had relied upon in its Denial Letter and First Appeal Denial Letter, in favor of the opinion of Dr. Denton, a pathologist it hired late in the appeals process and who did not perform an autopsy. See Metzger Decl., Exh. 19 at PageID #: 3029-30. Defendant did not offer any explanation as to why

Dr. Denton's opinion was of greater credibility than Dr. Hall's, Dr. Harle's, or the other physicians'.

Clearly, something happened to cause Masuda to crash, and his witnessed pre-crash behavior was unusual.  However, at first, Defendant could not explain what happened before the crash beyond an unspecified medical event such as a heart attack or seizure.  Defendant later relied Dr. Denton's opinion in concluding that a heart attack definitively occurred, and that the trauma to Masuda's face and head did not cause his death.  See Metzger Decl., Exh. 18 (Second Appeal Denial Letter) at PageID #: 3022.  While the assumed medical event, or aberrant behavior, was possibly a contributing factor to the collision, it did not substantially contribute to the loss.  Viewed skeptically, Defendant's factual finding that Masuda's death was caused by a heart attack and not the injuries to his face and body was clearly erroneous because the Court is left with the firm and definite conviction that Defendant made a mistake in reaching that decision.

Based on Defendant's failure to construe the provisions of the plan in accordance with their plain language and reliance on clearly erroneous findings of fact, Defendant abused its discretion in denying Plaintiff's claim for benefits.

17

## II. Remedies

### A. Remand

Although remand to the plan administrator is generally available in cases when the plan administrator abuses its discretion, here remand is not appropriate because no factual determinations remain unresolved.  Canseco v. Constr. Laborers Pension Tr. for S. Cal., 93 F.3d 600, 609 (9th Cir. 1996) (citation omitted).  Therefore, judgment will be entered in Plaintiff's favor, and Defendant is ordered to grant Plaintiff's claim for benefits.

### B. Request for Attorney's Fees

In case brought to recover unpaid ERISA benefits, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  "'[A] plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under his plan, should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"  Carpenters Health & Welfare Tr. for S. Cal. v. Vonderharr, 384 F.3d 667, 674 (9th Cir. 2004) (quoting Smith v. CMTA-IAM Pension Tr., 746 F.2d 587, 589 (9th Cir. 1984)).  If Plaintiff intends to recover attorney's fees and costs, she shall file her motion to do so by no later than **December 22, 2020**.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Expanded ERISA Administrative, filed February 26, 2020, construed as indicated, is HEREBY GRANTED. Defendant is HEREBY ORDERED to grant Plaintiff's claim for accidental death benefits. Plaintiff and Defendant are ORDERED to meet and confer regarding applicable interest, the form and substance of a proposed judgment, and any other outstanding issues by **December 11, 2020**. Plaintiff is HEREBY ORDERED to submit the proposed judgment by **December 18, 2020.** In the unlikely event the parties are unable to come to an agreement on the terms of the proposed judgment, Defendant may submit an optional response to Plaintiff's proposed judgment by **December 23, 2020.** Plaintiff's motion for attorney's fees and costs must be filed by no later than **December 22, 2020**.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 30, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MARNIE MASUDA-CLEVELAND VS. LIFE INSURANCE COMPANY OF NORTH AMERICA; CV 16-00057 LEK-WRP; ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE EXPANDED ERISA ADMINISTRATIVE RECORD**